# EXHIBIT A

| STATE OF NORTH CAROLINA | File No. 20 CVS 302 |
|---|---|
| WAKE County | In The General Court Of Justice<br>☐ District ☒ Superior Court Division |

| Name Of Plaintiff |
|---|
| CUMIS INSURANCE SOCIETY, INCORPORATED |
| Address |
| c/o Walter E. Brock, Young Moore & Henderson, P.O. Box 31627 |
| City, State, Zip |
| Raleigh NC 27622 |

**VERSUS**

**CIVIL SUMMONS**
☐ ALIAS AND PLURIES SUMMONS (ASSESS FEE)

G.S. 1A-1, Rules 3 and 4

| Name Of Defendant(s) | Date Original Summons Issued |
|---|---|
| Nationwide Mutual Fire Insurance Company | |
| | Date(s) Subsequent Summons(es) Issued |

**To Each Of The Defendant(s) Named Below:**

| Name And Address Of Defendant 1 | Name And Address Of Defendant 2 |
|---|---|
| Nationwide Mutual Fire Insurance Company<br>By Service Upon its Statutory Process Agent : NC Dept of Insurance<br>Commissioner of Insurance, Mike Causey<br>1201 Mail Service Center, Raleigh NC 27699-1201 | |

⚠️ **IMPORTANT!** You have been sued! These papers are legal documents, DO NOT throw these papers out! You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!

**¡IMPORTANTE!** ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales. ¡NO TIRE estos papeles!
Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos documentos!

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and
2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff) | Date Issued | Time |
|---|---|---|
| Walter E. Brock, Jr.<br>Young Moore and Henderson, P.A., P.O. Box 31627<br>P.O. Box 31627<br>Raleigh NC 27622 | 12/15/2020 | 5 ☐ AM ☒ PM |
| | Signature | |
| | ☒ Deputy CSC ☐ Assistant CSC ☐ Clerk Of Superior Court | |

| ☐ ENDORSEMENT (ASSESS FEE) | Date Of Endorsement | Time |
|---|---|---|
| This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | | ☐ AM ☐ PM |
| | Signature | |
| | ☐ Deputy CSC ☐ Assistant CSC ☐ Clerk Of Superior Court | |

**NOTE TO PARTIES:** Many counties have MANDATORY ARBITRATION programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.

(Over)

AOC-CV-100, Rev. 4/18
© 2018 Administrative Office of the Courts

|  |  | **RETURN OF SERVICE** |  |
|---|---|---|---|

I certify that this Summons and a copy of the complaint were received and served as follows:

## DEFENDANT 1

| Date Served | Time Served ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

## DEFENDANT 2

| Date Served | Time Served ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid<br>$ | Signature Of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name Of Sheriff (type or print) |
| Date Of Return | County Of Sheriff |

AOC-CV-100, Side Two, Rev. 4/18
© 2018 Administrative Office of the Courts

| | |
|---|---|
| NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| WAKE COUNTY | 20 CVS _____ |

CUMIS INSURANCE SOCIETY, INC,

    Plaintiff,

v.

NATIONWIDE MUTUAL FIRE INSURANCE COMPANY,

    Defendant.

**COMPLAINT**

CUMIS INSURANCE SOCIETY, INC., complaining of NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, alleges and says that:

**PARTIES**

1. CUMIS INSURANCE SOCIETY, INC. ("CUMIS") is a foreign insurance company admitted to write property and casualty insurance in North Carolina with its principal place of business in Madison, Wisconsin.

2. NATIONWIDE MUTUAL FIRE INSURANCE COMPANY ("Nationwide") is a foreign insurance company admitted to write property and casualty insurance in North Carolina with its principal place of business in Columbus, Ohio.

**JURISDICTION AND VENUE**

3. This Court has jurisdiction over the parties and the subject matter, and venue is proper in Wake County.

## BACKGROUND

4. Quorum Center Condominium is a mixed-use condominium building located at 323 W. Jones Street, Raleigh, North Carolina.

5. The Quorum Center Master Owners Association, Inc. ("Master Association") is a nonprofit corporation responsible for the administration of the Quorum Center Condominium, including its operation and maintenance, as set forth in the Declaration of Condominium for Quorum Center Condominium.

6. The Master Association purchased and Nationwide issued its "Premier Businessowners Policy" number ACP BPOF 2283498178 with limits of approximately $55 Million for the Quorum Center building and contents located at 323 W. Jones Street, Raleigh, North Carolina, which policy was in full force and effect on March 16, 2017.

7. The Local Government Federal Credit Union ("LGFCU") operated a facility and owned units and property in the Quorum Center Condominium on floors one through six as of March 16, 2017.

8. The Nationwide policy as of March 16, 2017 named as insureds on its "Schedule of Named Insureds," among others, the Master Association and the LGFCU, and therefore Nationwide insured the units and property owned by the LGFCU in the Quorum Center Condominium.

9. CUMIS issued to the LGFCU its policy No. 042358 for the period June 30, 2016 to June 30, 2017, for the LGFCU units and property at the Quorum Center Condominium.

10. CUMIS also insured the LGFCU units and property in the Quorum Center Condominium on March 16, 2017.

11. A massive fire occurred on March 16, 2017, at the Metropolitan Apartments ("Metropolitan Fire") then under construction at 314 Jones Street, Raleigh, North Carolina, immediately across Jones Street from the Quorum Center building, destroying that building, and threatening destruction of and severely damaging several surrounding buildings and their contents, including the Quorum Center building and its contents.

12. The Metropolitan Fire and fire-fighting efforts extensively damaged the Quorum Center building exterior, building interior, and contents, forcing LGFCU and its tenants to abandon the building, salvage contents, and undertake efforts to continue their business operations elsewhere until the building could be remediated and restored.

13. LGFCU incurred, and CUMIS paid on its behalf, expenses necessary to move its Quorum Center operations temporarily to a facility on Wake Forest Road.

14. LGFCU incurred, and CUMIS paid on its behalf, lost rental income when LGFCU's tenants occupying its units in the Quorum Center were forced to leave the building and the leases had to be suspended.

15. LGFCU incurred, and CUMIS paid on its behalf, necessary expenses after the loss to preserve the property and maintain the building systems necessary to support the remediation and restoration of the building.

16. LGFCU incurred, and CUMIS paid on its behalf, necessary expenses after the loss to preserve, remediate and restore the building, its contents, and its infrastructure and security systems, including demolition and remediation contractors, construction contractors, security contractors, technology contractors, and an owners' representative for supervision and administration of the reconstruction.

17. LGFCU incurred, and CUMIS paid on its behalf, necessary additional expenses for its annual meetings at a local hotel due to the loss of the Quorum Conference Center.

18. CUMIS demanded that Nationwide pay all LGFCU losses and reimburse CUMIS the losses that it paid on behalf of LGFCU due to the Metropolitan Fire.

19. Nationwide has failed and refused to pay LGFCU its losses or to reimburse CUMIS for its payments to LGFCU as a result of losses related to the damage to the condominium units and property on floors two and three, and part of floor six, which units had not been up-fitted when the LGFCU first purchased those units many years before the fire loss.

20. The Master Association has assigned its rights as named insured and approved, authorized, and delegated authority to the CUMIS to pursue at its sole expense in its own name or in the name of the Master Association, its claims against Nationwide for losses due to Nationwide's refusal to pay the LGFCU losses that were paid by CUMIS.

21. LGFCU has assigned to CUMIS its rights as named insured under the Nationwide policy to pursue its claims against Nationwide.

22. CUMIS is subrogated as a matter of law to the rights of its insured LGFCU to pursue its claims against Nationwide and brings this action individually, as an assignee of the Master Association and the LGFCU, and as a subrogee of the LGFCU. .

**FIRST CLAIM FOR RELIEF**
(Breach of Contract and Equitable Subrogation)

23. CUMIS incorporates herein by reference the allegations of the previous paragraphs to same extent as if fully set forth herein.

24. CUMIS, LGFCU and the Master Association have satisfied all conditions precedent to bringing this action.

25. Nationwide insured the Quorum Center building for the direct physical loss of fire with replacement cost coverage at limits of $54,844,100, subject to a deductible of $5,000.00.

26. Nationwide insured the Quorum Center for business income loss for the period of restoration.

27. Nationwide insured the Quorum Center for extra expense incurred for the period of restoration.

28. The Nationwide Policy's Property Coverage Form provides in pertinent part as follows:

> Throughout this policy the words "you" and "your" refer to the Named Insureds shown in the Declarations. ...
>
> **A. COVERAGES**
>
> We will pay for direct physical loss of or damage to Covered Property at the described premises in the Declarations caused by or resulting from any Covered Cause of Loss.
>
> 1. COVERED PROPERTY
>
> Covered Property includes Buildings as described under paragraph a. below, Business Personal Property as described under paragraph b. below, or both, depending on whether a Limit of Insurance is shown in the Declarations for that type of property. Regardless of whether coverage is shown in the Declarations for Buildings, Business Personal Property, or both, there is no coverage for property described under paragraph 2., PROPERTY NOT COVERED.
>
> a. **Buildings**, meaning the described buildings and structures at the described premises, including:
>
> ...
>
> b. **Business Personal Property** located in or on buildings or structures at the described premises ...., consisting of the following:

29. Nationwide endorsed its policy with the Condominium Association Coverage endorsement PB 17 01 11 14, which provided as follows:

This endorsement modifies insurance provided under the following:

PREMIER BUSINESSOWNERS PROPERTY COVERAGE FORM
...

B. Under the PREMIER BUSINESSOWNERS PROPERTY COVERAGE FORM, the following amendments are made:

1. Under Section A. COVERAGES, 1. COVERED PROPERTY, Paragraph a. Buildings is replaced by the following:

   a. **Buildings**, meaning the described buildings and structures at the described premises, including:

   ...

   (2) Fixtures, outside of individual units, including outdoor fixtures;

   (3) Permanently installed:

   (a) Machinery; and
   (b) Equipment;

   (4) Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

   ...

   (c) Flooring

   (d) Appliances used for refrigerating, ventilating, cooking, dishwashing, or laundering that are not contained within individual units; and

   ...

   (6) Any of the following types of property contained within a unit, regardless of ownership, if your Condominium Association Agreement requires you to insure it:

   (a) Fixtures, improvements and alterations that are a part of the building or structure; and

   (b) Appliances, such as those used for refrigerating, ventilating, cooking, dishwashing, laundering, security or housekeeping; and

...

> But Building does not include personal property owned by, used by or in the care, custody or control of a unit-owner except for personal property listed in Paragraph B.1.a.(6) above.

2. Under Section A. COVERAGES, 1. COVERED PROPERTY, Paragraph b. Business Personal Property is replaced by the following:

b. **Business Personal Property** located in or on buildings or structures at the described premises ...., consisting of the following:

(1) Personal property owned by you or owned indivisibly by all unit-owners;

...

(3) Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under personal property of others.

Business Personal Property does not include property owned only by a unit-owner, unless it is in your care, custody or control as covered below.

This also includes property of others that is in your care, custody or control except as otherwise provided in Section E. PROPERTY LOSS CONDITIONS, 5. Loss Payment, paragraph e.(3)(b).

...

4. The following is added to Section E. PROPERTY LOSS CONDITIONS

**Unit-Owner's Insurance**

A unit-owner may have other insurance covering the same property as this insurance. This insurance is intended to be primary, and not contribute with such other insurance

30. The Nationwide Policy also contains a North Carolina Amendatory endorsement, form PB 90 32 11 14, which provides in pertinent part as follows:

CONDOMINIUM OR TOWNHOUSE ASSOCIATION AMENDMENTS:

If you are a Condominium or Townhouse Association:

1. Containing at least one residence, created after October 1, 1986; or

2. Whose bylaws and declarations conform with the North Carolina Condominium Act enacted October 1, 1986.

the following amendments also apply to you:

...

The following provisions are added:

...

B. Under the PROPERTY COVERAGE FORM:

1. In Section A. COVERAGES, 1. COVERED PROPERTY, a. Buildings, paragraphs (2), (4) and (5)(d) are replaced by the following:

a. **Buildings**, meaning the described buildings and structures at the described premises, including:

...

(2) Fixtures, outside of individual units, including outdoor fixtures.

(4)[1] Any of the following types of property contained within a unit, regardless of ownership, if your Condominium Association Agreement requires you to insure it:

(a) Fixtures, improvements and alterations that are a part of the building or structure; and

(b) Appliances, such as those used for refrigerating, ventilating, cooking, dishwashing, laundering, security or housekeeping; and

(5) (d) Appliance used for refrigerating, ventilating, cooking, dishwashing or laundering that are not contained within individual units.

---

[1] The numbering for the sub-paragraphs of this endorsement corresponds with the Property Coverage form, not the Condominium Association Coverage Endorsement discussed above. Paragraph B.1.a.(4) of this endorsement is identical to paragraph B.1a.(6) of the Condominium Association Coverage Endorsement.

But Building does not include personal property owned by, used by or in the care, custody or control of a unit-owner except for personal property listed in paragraph (4) above.

2. In Section A. COVERAGES, 1. COVERED PROPERTY, Paragraph b. Business Personal Property is replaced by the following:

   b. **Business Personal Property** located in or on buildings or structures described in the Declarations...., consisting of the following:

   (1) Personal property owned by you or owned indivisibly by all unit-owners;

   ...

   (2) Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under personal property of others.

   Business Personal Property does not include property owned only by a unit-owner, unless it is in your care, custody or control as covered below.

   This also includes property of others that is in your care, custody or control except as otherwise provided in Section E. PROPERTY LOSS CONDITIONS, 5. Loss Payment, under paragraph 3.

31. The Declaration of Condominium For Quorum Center Condominium ("Declaration of Condominium") requires the Association to obtain and maintain a policy of property insurance on the Quorum Center Condominium that affords certain minimum coverages and limits as follows:

ARTICLE XI
INSURANCE

Section 11.1 <u>Property Insurance</u>. The Association shall obtain and maintain at all times a policy of property insurance **on the Building** (ISO special form or its equivalent) in an amount not less than one hundred percent (100%) of the replacement cost **of <u>the Building and all contents</u> thereof (except as expressly provided herein)** at the time such insurance is purchased and at the time of each renewal thereof (excluding the cost of foundations and footings, and the cost of any

personal property supplied or installed by Owners), with a commercially reasonable deductible not in excess of $10,000.00. The policy shall be issued by an insurance company properly licensed to do business in the State of North Carolina, with a general policyholder's rating of at least "A" in the most recent edition of the Best's Key Rating Guide. The policy shall provide that **each Owner is an insured person with respect to his Unit** and his allocated interest in the Common Elements. **The policy shall contain** an inflation guard endorsement, if available, and a construction code endorsement, if available, as well as **a special condominium endorsement providing as follows**: for waiver of subrogation against any Owner, and any Owner's employees or agents; that it may not be canceled or substantially modified without at least thirty (30) days' prior written notice to the Association and all insureds, including all Owners and Mortgagees; that no act or omission by any Owner will preclude recovery upon such policy; **and that if, at the time of a loss under the policy, there is other insurance in the name of an Owner covering the same risk covered by the policy, the Association's policy provides primary insurance**. Each property insurance policy shall provide that adjustment of loss shall be made by the Association as insurance trustee. Each property insurance policy shall provide for the issuance of certificates or mortgagee endorsements to Mortgagees.

...

(emphasis added).

32. The Declaration of Condominium defines "Building" as "the building located upon the Land, which contains certain Common Elements and four (4) levels of both Commercial Units and Parking Units, two (2) levels of Commercial Units, and eight (8) levels of Residential Units."

33. The North Carolina Condominium Act, N.C. Gen. Stat. §47C-101 et. seq., applies to the Quorum Center Condominium.

34. Pursuant to N.C. Gen. Stat. §§47C-3-113 (a) and (b), the North Carolina Condominium Act requires the Association to maintain property insurance that affords certain coverages with specified minimum limits of insurance.

35. The North Carolina Condominium Act provides in N.C. Gen. Stat. §47C-3-113(c) that "[t]he declaration may require the association to carry any other insurance, and the association may carry any other insurance it deems appropriate to protect the association or the unit owners."

36. The North Carolina Condominium Act provides in N.C. Gen. Stat. §48C-1-113(d)(4) that the property insurance policies an Association maintains pursuant to the Condominium Act's requirements "must provide that" "[i]f, at the time of a loss under the policy, there is other insurance in the name of a unit owner covering the same risk covered by the policy, the Association's policy provides primary insurance."

37. On July 24, 2017, CUMIS, on behalf of itself and the LGFCU, sent Nationwide a letter that explained in detail why the Nationwide policy provides primary and non-contributory coverage for all improvements and betterments to all of the units owned by the LGFCU, including the improvements and betterments installed by the LGFCU after it purchased the units.

38. CUMIS' July 24, 2017 letter requested that Nationwide likewise provide an explanation of its coverage position in writing.

39. Nationwide did not provide the LGFCU and CUMIS with a written explanation of its written coverage position for over three months.

40. Nationwide eventually responded to CUMIS and LGFCU on December 4, 2017, yet wrongfully denied coverage for damage to the fixtures, improvements, and alterations that the LGFCU made to units after the LGFCU purchased those units.

41. Nationwide's December 4, 2017 denial letter omitted, failed to acknowledge, and misrepresented pertinent provisions of the Nationwide policy material to the coverages at issue, including provisions that were set out in CUMIS's July 24, 2017 letter.

42. Nationwide's December 4, 2017 denial letter omitted, failed to acknowledge, and misrepresented material provisions of the Declaration of Condominium, including provisions that were set out in CUMIS's July 24, 2017 letter.

43. Nationwide's December 4, 2017 denial letter omitted, failed to acknowledge, and misrepresented material provisions of the North Carolina Condominium Act, including provisions that were set out in CUMIS' July 24, 2017 letter.

44. Nationwide wrongfully denied the LGFCU's claim for damage to the fixtures, improvements, and alterations that the LGFCU made to units and for damage to the LGFCU's personal property, and therefore CUMIS paid under its policy to the LGFCU in excess of $2 Million that was owed to LGFCU by Nationwide.

45. CUMIS is entitled to recover from Nationwide the sum of Two Million One Hundred Sixty Five Thousand and 58/100 Dollars ($2,165,070.58), plus interest and costs as allowed by law, for Nationwide's breach of its insurance contract. CUMIS has a right to recover from Nationwide the sum of Two Million One Hundred Sixty Five Thousand and 58/100 Dollars ($2,165,070.58), plus interest and costs as allowed by law, under the doctrine of equitable subrogation because CUMIS paid amounts that Nationwide should have paid to LGFCU for its losses.

### COUNT II
(Unfair Trade Practices)

46. CUMIS incorporates herein by reference the allegations of the previous paragraphs to same extent as if fully set forth herein.

47. Nationwide was engaged in the business of insurance at all relevant times, and all of Nationwide's conduct alleged herein was in or affecting commerce.

48. The LGFCU made a claim with Nationwide for all loss and damage to all of its units in the Quorum Center, including the loss and damage to fixtures, improvements, and alterations installed or made by the LGFCU after purchasing the units.

49. CUMIS and the LGFCU conferred with Nationwide about those claims and coverage for the LGFCU's losses.

50. CUMIS and the LGFCU both explained by written correspondence in detail why the facts, the Declaration of Condominium, the North Carolina Condominium Act, and the Nationwide Policy established that Nationwide's coverage for the LGFCU's fire losses was primary and non-contributory to the CUMIS policy issued to LGFCU.

51. CUMIS, on behalf of the LGFCU, requested that Nationwide provide a written explanation of its coverage position.

52. Nationwide failed to provide a written explanation of its coverage position in a reasonable time.

53. Nationwide eventually provided a written explanation of its coverage position, and denied coverage for the LGFCU units that were not up-fitted at the time those units were purchased by the LGFCU, and in doing so misrepresented controlling provisions of the Nationwide policy, the Declaration of Condominium, and North Carolina Condominium Act.

54. Nationwide's written explanation of its coverage position and denial letter failed to acknowledge, let alone explain the significance of, provisions of the Nationwide policy, the Declaration of Condominium, and the North Carolina Condominium Act that established that Nationwide's coverage was primary and non-contributory, despite the fact those very provisions were quoted and their significance explained in detail in writing to Nationwide by both CUMIS and LGFCU.

55. The controlling provisions of the Nationwide policy, the Declaration of Condominium, and North Carolina Condominium Act that Nationwide misrepresented, omitted, or otherwise failed to acknowledge and apply include, but may not be limited to, the following:

a. Nationwide Policy:

   i. The term "you";

   ii. Section A. COVERAGES, 1. COVERED PROPERTY, Paragraph a. Buildings;

   iii. Section A. COVERAGES, 1. COVERED PROPERTY, Paragraph b. Business Personal Property; and

   iv. The "Unit-Owner's Insurance" provision added by the Condominium Association Coverage endorsement, form PB 17 01 11 14, and required by the North Carolina Condominium Act.

b. Declaration of Condominium:

   i. Article I Definition, Section 1.2 Buildings;

   ii. Article I Definitions, Section 1.8 Commercial Unit;

   iii. Article I Definitions, Section 1.33 Residential Unit;

   iv. Article I Definitions, Section 1.35, Unit;

   v. Article IV Description of Units, Section 4.2.2 Unit Boundaries;

   vi. Article XI, Insurance, Section 11.1 Property Insurance;

c. North Carolina Condominium Act:

   i. N.C. Gen. Stat. 47C-2-102(1);

   ii. N.C. Gen. Stat. § 47C-3-113(a)(1);

   iii. N.C. Gen. Stat. § 47C-3-113(b);

   iv. N.C. Gen. Stat. § 47C-3-113 (c);

   v. N.C. Gen. Stat. § 47C-3-113(d); and

   vi. N.C. Gen. Stat. § 47C-3-113 comment 2, 3, and 9.

56. Nationwide committed Unfair Claim Settlement Practices as defined by N.C. Gen. Stat. §58-63-15(11), and committed unfair acts and practices in trade or commerce, in violation of N.C. Gen Stat. §75-1.1, by:

   a. Failing to act reasonably promptly upon communications with respect to the LGFCU's claims under the Nationwide Policy;

   b. Failing to implement reasonable standards for the prompt investigation of claims arising under insurance policies;

   c. Failing to affirm or deny coverage of claims within a reasonable time;

   d. Misrepresenting pertinent facts and insurance policy provisions relating to coverages at issue:

   e. Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear;

   f. Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for the denial of a claim; and

   g. In such other and further ways as may be shown in the trial of this action.

57. Nationwide's conduct offends established public policy and was deceptive, immoral, unethical, oppressive, unscrupulous, substantially injurious to consumers, and intentional.

58. Nationwide's conduct violated N.C. Gen. Stat. § 58-63-15(11) and N.C. Gen. Stat. §75-1.1.

59. CUMIS has suffered damages in excess of $25,000.00 for having to pay losses to LGFCU that should have been paid by Nationwide as a direct and proximate result of Nationwide's unfair claim settlement practices and its unfair acts and practices in trade or commerce.

60. CUMIS is entitled to all damages proximately caused by Nationwide's unfair claim settlement practices and its unfair acts and practices in trade or commerce, treble damages, and attorneys' fees as allowed by law.

WHEREFORE CUMIS prays the Court as follows:

1. That CUMIS have and recover of Nationwide the sum of Two Million One Hundred Sixty Five Thousand and 58/100 Dollars ($2,165,070.58) that it paid to LGFCU and which should have been paid by Nationwide under its policy of primary insurance for the LGFCU's fire losses;

2. That CUMIS have and recover of Nationwide its damages trebled, plus costs and attorneys' fees as allowed by law, for Nationwide's unfair claim settlement practices and its unfair acts and practices in trade or commerce committed against CUMIS;

3. That the Court award CUMIS its costs, interest and attorneys' fees as allowed by law.

4. That the Court grant CUMIS such other and further relief as to it may seem just and proper.

This the 15th day of December, 2020.

YOUNG MOORE AND HENDERSON, P.A.

BY: /s/ Walter Brock

WALTER E. BROCK, JR.
N.C. State Bar No. 8195
walter.brock@youngmoorelaw.com
ANDREW P. FLYNT
N.C. State Bar no. 41238
andrew.flynt@youngmoorelaw.com
Post Office Box 31627
Raleigh, North Carolina 27622
Telephone (919)782-6860
Facsimile (919) 782-6753
*Attorneys for the Plaintiff*